The Honorable Samuel J. Steiner
Chapter 7
January 31, 2002   9:30 a.m.

Diana K. Carey
KARR TUTTLE CAMPBELL
1201 Third Avenue, Suite 2900
Seattle, Washington 98101-3028
(206) 223-1313
Attorneys for Pennsylvania Higher
Education Assistance Agency

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| In re | ) |
| | ) |
| DEBORAH HELEN BIRRANE, | ) Case No. 01-16399 |
| | ) |
| Debtor. | ) |
| _____ | ) |
| | ) |
| DEBORAH HELEN BIRRANE, | ) Ad. Pro. No. A01-01413 |
| | ) |
| Plaintiff, | ) |
| | ) PHEAA'S TRIAL BRIEF |
| v. | ) |
| | ) |
| MELLON FINANCIAL CORPORATION, | ) |
| PENNSYLVANIA HIGHER EDUCATION | ) |
| ASSISTANCE AGENCY AND STUDENT | ) |
| LOAN SERVICING CENTER, a Division of | ) |
| P.H.E.A.A., | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

PHEAA's TRIAL BRIEF - 1
#393368 v1 / 32935-001

*Law Offices*
**KARR·TUTTLE·CAMPBELL**
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

Pennsylvania Higher Education Assistance Agency, an agency and instrumentality of the Commonwealth of Pennsylvania ("PHEAA"), submits its trial brief in accordance with the Order on Pretrial Conference. Plaintiff/Debtor, Deborah Helen Birrane ("Birrane"), seeks pursuant to 11 U.S.C. §523(a)(8) to discharge a Federal Family Education Loan Program Consolidation Loan. The loan combined several educational loans into a new note.

The educational loans consolidated were incurred by Birrane to obtain a Bachelor of Arts Degree in Social Work and a Master of Fine Arts degree with an emphasis on dance choreography and performance. Birrane is a 36 year old single person with no dependents and is working less than full time in the dance and choreography field. There is no evidence that Birrane has made a diligent effort to secure a stable, salaried job outside of this field.

## ADMITTED FACTS

1. On the date of the filing of her bankruptcy case, Birrane had an outstanding Consolidation Student Loan owing to PHEAA with an original principal balance of $43,434.55.

2. Interest continues to accrue on the loan at a rate of 9% per annum.

3. Birrane incurred her loan for an educational benefit. Her promissory note evidences a student loan made under a program funded in whole or in part by a governmental entity within the meaning of 11 U.S.C. § 523 (a) (8).

## CURRENT STATUS OF LOANS

| Loan Type: | Disb. Date: | Total Disbursed: | Interest Rate: | Current* Principal Balance: | Current* Interest Balance: | Current** Collection Costs: | Current* total balance: |
|---|---|---|---|---|---|---|---|
| CONS | 4/20/92 | $43,434.55 | 9% | $55,399.04 | $1,693.83 | $0.00 | $57,092.87 |

*Current as of January 31, 2002  **Collection costs are not yet charged to the account.
The above information is supported by the files and records of PHEAA.

PHEAA's TRIAL BRIEF - 2
#393368 v1 / 32935-001

Law Offices
KARR·TUTTLE·CAMPBELL
A Professional Service Corporation
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

If these loans were deemed nondischargeable, the monthly payment amount would be approximately $473.00 on a 25 year repayment plan. Interest accrues at $14.07 daily, and thus monthly interest accrual is $436.40.

## ARGUMENT

### I. PHEAA HAS PRESENTED PRIMA FACIE EVIDENCE OF BIRRANE'S OBLIGATION TO REPAY HER STUDENT LOANS TO PHEAA.

To meet its evidentiary burden, PHEAA must first establish the existence of the debt and that the debt is owed to or insured or guaranteed by a governmental agency or nonprofit institution of higher learning. In re Raymond, 169 B.R. at 67, 69 (Bankr. W.D. Wash. 1994). Birrane has already admitted these facts. Therefore, the burden shifts to Birrane to prove undue hardship within the meaning of Section 523 (a)(8). Id.

*Standard of proof*

The Ninth Circuit Court of Appeals prescribed the test for dischargeability under 11 U.S.C. § 523(a)(8) in United Student Aid Funds, Inc. v. Pena (In re Pena), 155 F.3d 1108 (9th Cir. 1998), (adopting the three-part test from In re Brunner, 46 B.R. 752 (S.D.N.Y. 1985), aff'd, 831 F.2d 395 (2d Cir. 1987). Under Brunner, student loans are dischargeable only if:

> 1. the debtor cannot, based on current income and expenses, maintain a "minimal" standard of living for [herself or her] dependents if forced to repay the loans;
>
> 2. additional circumstances exist indicating that the state of affairs is likely to persist for a significant portion of the repayment period of the student loan, and
>
> 3. the debtor has made good faith efforts to repay the loans.

PHEAA's TRIAL BRIEF - 3
#393368 v1 / 32935-001

*Law Offices*
KARR·TUTTLE·CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

831 F.2d at 396. The debtor must prove each of the elements by a preponderance of the evidence. In re Rifino, 245 F.3d 1083, 1087-88 (9th Cir. 2000).

II. **BIRRANE CANNOT MEET THE BRUNNER TEST**

A. *Birrane Can Retain a Minimal Standard of Living and Still Repay the Loan.*

Through discovery, Birrane has provided the following list of monthly personal expenses [PHEAA had to derive a monthly amount from information provided in some cases]:

**BIRRANE'S MONTHLY EXPENSES**

|  | Low Range: | High Range: |
|---|---|---|
| Rent: | $550 | $565 |
| Electricity: | $8 | $26 |
| Gas: | $15 | $18 |
| Telephone: | $30 | $62 |
| Car Insurance: | $75 | $75 |
| Gasoline: | $40 | $55 |
| Triple A: | $5 | $5 |
| Oil Change: | $15 | $15 |
| Life Insurance: | $14 | $14 |
| Health Insurance: | $20.47 | $41 |
| Naturopathic Doctor: | $50 | $75 |
| Dentist: | $16.66 | $16.66 |
| Contact Lenses: | $14.83 | $14.83 |
| Lens Solution: | $6 | $6 |
| Vitamins: | $10 | $10 |
| Birth Control: | $5 | $5 |
| Groceries: | $100 | $100 |
| Meals outside the home: | $0.00 | $20.00 |
| Recreation: | $32 | $35 |
| Clothing: | $0.00 | $0.00 |
| Charitable Contributions: | $10 | $15 |
| Total: | $1,016.96 | $1,173.49 |

*Law Offices*
**KARR·TUTTLE·CAMPBELL**
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

Birrane reportedly also has some expenses for the following, but they are not clearly listed as to any general amount or frequency: Car Repair Expenses, Doctor's Visits, Acupuncture.

The above indicates that Birrane has fairly minimal household expenses. Her adjusted gross income for the year 2000 was $17,096.00 or $1,424.67 per month. [Debtor's counsel has indicated that Birrane's 2001 earnings would be roughly comparable to those in 2000.]

Even if Birrane's earnings are deemed to be insufficient to cover her expenses, the first prong of Brunner requires more than a showing of tight finances. In re Nascimento, 241 B.R. 440, 445 (9th Cir. B.A.P. 1999). Congress views garden-variety hardship as an insufficient excuse for a discharge of student loans. Id. There is nothing spectacular about Birrane's current situation. Birrane has shown us that she doesn't make very much money as a dancer. Birrane has stated that she is under a doctor's care for heal spurs, and sore back and legs, all conditions which appear to be related to her occupation. However, despite those conditions, Birrane is able to function as a dancer/choreographer.

B.  There are no Additional Circumstances to Indicate that Birrane's Future Income Will not be Stable and Improving.

The second prong of the Brunner test, which requires a showing that additional circumstances exist indicating that debtor's financial state of affairs is likely to persist for a significant portion of the repayment period of the student loans, is intended to effect the clear congressional intent to make the discharge of student loans more difficult than that of other nonexcepted debt. Nascimento, 241 B.R. at 445.

The only circumstance revealed to PHEAA that prevents Birrane from repaying this student loan is Birrane's own reluctance to seek full time employment in a field that will pay her a livable wage. Birrane does not provide any evidence that she cannot work full time. She presumably

PHEAA's TRIAL BRIEF - 5
#393368 v1 / 32935-001

*Law Offices*
KARR·TUTTLE·CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

experiences some aches and pains which appear to be directly associated with the very physical nature of dance/choreography. These conditions, however, do not appear to prevent her from dancing. There is no evidence to suggest these conditions would prevent her from working in another field.

The student loans incurred by Birrane have earned her two advanced degrees. Birrane has no dependants, so her household expenses, as shown above, are and can be kept low. There is little to suggest that she could not obtain employment in a field that will pay her a salary adequate for both her living expenses and repayment of her student loan.[1] See, e.g., In re: Greco, 251 B.R. 670, 677 (Bankr. E.D. Pa. 2000) (holding that the debtor had failed to meet her burden under the second prong because "[t]he testimony offered by the Debtor at trial does not reveal a diligent effort on her part to secure a stable, salaried job," and "the Debtor has not demonstrated any efforts to seek employment in another field").

B.  Birrane's Good Faith is in Question.

The third element of the Brunner test requires either an effort actually made to repay the loans or a showing that the forces preventing repayment are truly beyond the plaintiff's reasonable control. In re Wegrzyniak, 241 B.R. 689, 692 (Bankr. D. ID 1999). Under the third prong, the debtor's efforts are measured by her efforts to obtain employment, maximize income, and minimize expenses. Id. PHEAA questions Birrane's good faith effort to obtain employment in a field that will support her.

---

[1] She could even continue to dance and teach and choreograph dances in her spare time. Perhaps she could bring her art to students and expanding their love of art, as an unpaid volunteer.

PHEAA's TRIAL BRIEF - 6
#393368 v1 / 32935-001

*Law Offices*
KARR·TUTTLE·CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

The court in In re Holtorf, 204 B.R. 567, 572 (Bankr. S.D Cal. 1997), held that under both the Johnson and Brunner good faith prongs, the unmarried debtor without family obligations on his leisure time, "has failed to show how working 20 hours per week fulfills his "duty to obtain any funds he or she can, so as to repay the debts he owes.'" The court ruled that a debtor has the duty to obtain at least full-time or multiple part-time employment equivalent to 40 hours per week, if not more. Id. Because the court found that the debtor had failed to show that the conditions that led to the debtor's current financial condition were outside of his direct, reasonable control, the court concluded that the debtor failed to satisfy the good faith analysis of the Brunner case. Id.

Birrane's responses to PHEAA's interrogatories regarding her work history show that Birrane is committed to working in the arts. Aside from a two to three month stint working for a cleaning service in 1998, Birrane has not worked outside of the dance/choreography field in years. Birrane's tax return for the year 2000 shows an adjusted gross income of $17,096.00. Her year 1999 tax return shows an adjusted gross income of $17,664.00. This documentation indicates that in the dance/choreography field, Birrane's income has remained consistently low. It is reasonable to question Birrane's refusal to change employment options.

It is not "good faith" if Birrane refuse to change careers to one which will provide financial compensation such that she can maintain her household and repay her creditors. Nonetheless, if the court determines that Birrane fails to meet either the first or second prong, it need not address the good faith prong. Nascimento, 241 B.R. at 445 ("the bankruptcy court's inquiry must end there, with a finding of no dischargeability").

PHEAA's TRIAL BRIEF - 7
#393368 v1 / 32935-001

*Law Offices*
KARR·TUTTLE·CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

## III. BIRRANE'S DEBT SHOULD NOT BE DISCHARGED BECAUSE SHE COULD REPAY HER LOAN VIA DIRECT CONSOLIDATION.

Birrane should not be granted a discharge of PHEAA's loan because running throughout all three of the Brunner prongs is a failure by the Debtor to avail herself of the benefits of loan consolidation through the U.S. Department of Education's William D. Ford Direct Loan Consolidation Program.[2] Of particular benefit is the Income Contingent Repayment Plan ("ICRP"). This repayment plan provides debtors with flexibility to meet their loan obligations without undue financial hardship. The annual amount payable under an ICRP by a borrower is the lesser of (1) the amount the borrower would repay annually over twelve years, or (2) twenty percent (20%) of discretionary income. 20 U.S.C. § 1087(a), et seq.; 34 C.F.R. §685.209(a)(2)(i) and (ii). Each year, the debtor's monthly payments are recalculated based on the debtor's annual income, the total amount of her loans, and the size of her family. The debtor would have as many as 25 years to pay off the debt, and if she is unable to do so within that time, the secretary cancels the loan. See 34 C.F.R. § 685.209(c)(4)(i) and (iv).

In In re Douglass, 237 B.R. 652 657 (Bankr. N.D. Ohio 1999), the court held that the debtor's attempt to obtain a discharge of her student loans was tantamount to an abuse of the bankruptcy process where, among other facts, the debtor made no attempt to negotiate a repayment schedule which would accommodate her means, specifically citing the ICRP program.

PHEAA has consulted the government's website calculator (see exhibits) to determine what the payments would be for Birrane under this program, based on: (1) Year 2000 Adjusted Gross

---

[2] The William D. Ford Federal Direct Loan Program was enacted in 1993 by the Student Loan Reform Act of 1993, which was part of the Omnibus Budget Reconciliation Act of 1993 (COBRA 1993), P.L. 103-66, 107 Stat. 312, 340 (codified as amended at § 451 et seq. of the Higher Education Act of 1965, as amended (the HEA), 20 U.S.C. §1087a et seq.).

PHEAA's TRIAL BRIEF - 8
#393368 v1 / 32935-001

*Law Offices*
KARR·TUTTLE·CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

Income ("AGI") of $17,096.00; (2) $57,093.00 balance (principal and interest owing) as of January 31, 2002; (3) an interest rate of 9.00%; and (4) a household of one. These charts reflect payments ranging from $700.26 per month for a standard 10 year repayment plan to $141.77 per month for the income contingent repayment plan (ICRP). This information is relevant to Birrane's present and future ability to repay the student loan debt, as well as her good faith.

## IV. IF THE COURT DETERMINES THAT BIRRANE MEETS THE BRUNNER HARDSHIP TEST, IT COULD CONSIDER PARTIAL DISCHARGE OF PHEAA'S LOAN.

As the court is aware, the Ninth Circuit Bankruptcy Appellate Panel in In re Taylor, 233 B.R. 747 (B.A.P. 9TH Cir. 1998), determined that Congress did not intend that student loans be discharged in part – it was an all or nothing analysis of undue hardship. In the context of a marital discharge, the Ninth Circuit in Myrvang criticized Taylor. Myrvang v. Myrvang (In re Myrvang), 232 F.3d 1116 (9th Cir. 2000). Although the Ninth Circuit's position on partial discharge is not entirely clear, courts in this jurisdiction have begun using the logic of Myrvang to authorize partial discharge of student loans if only a portion of the loan would result in undue hardship. E.g., Saxman v. U.S. Dept. of Educ., 263 B.R. 342 (W.D. Wash. 2001), which is currently on appeal before the Ninth Circuit. See also In re Yapuncich, 266 B.R. 882 (Bankr. Mont. 2001) (authorizing partial discharge where equities weighed in favor of debtor).

If the court believes that Birrane meets the Brunner test, the court can consider if Birrane would be an appropriate case for application of partial discharge.

*Law Offices*
KARR·TUTTLE·CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

## SUMMARY

PHEAA respectfully requests that the court find that Birrane's student loan owing to PHEAA is nondischargeable because she fails to meet the hardship standard adopted in the Ninth Circuit.

DATED this 25th day of January, 2002.

KARR TUTTLE CAMPBELL

By: *[signature]*
Diana K. Carey, WSBA #16239
Attorneys for Pennsylvania Higher
Education Assistance Agency

PHEAA's TRIAL BRIEF - 10
#393368 v1 / 32935-001

*Law Offices*
KARR·TUTTLE·CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100